Case 2.
4 r 445
46 1207

MARTIN GRIDLEY and another *v*. CONNER.

In an action between partners for the final settlement, and partition of the effects of the partnership, no powers which may have been conferred during its progress on any one of the partners as a receiver, or for liquidating the affairs of the concern, can change their relative position and ultimate responsibilities towards each other. A partner cannot single out a particular transaction, and obtain a judgment against his co-partners thereupon. He can only require a final liquidation of the affairs of the partnership, and for this purpose any one of them may require that all the matters in controversy shall be decided upon by a jury.

APPEAL from the District Court of the First District, *Buchanan*, J.

BULLARD, J. This is an action originally brought by two of the partners of the firm of Conner, Gridley & Co., against the third, in order to put an end to the partnership previously to the time fixed for its expiration by the articles of partnership, and for a final settlement of its concerns. The defendant, Conner, is

charged by the plaintiffs with various fraudulent acts, such as making false entries, and withdrawing money from the concern. A sequestration was obtained in the first instance, and all the books and effects of the partnership were sequestered.

At this stage of the cause commenced an incessant skirmish of rules upon rules, which has rendered the proceedings very complex and confused, and in which the parties seem to have forgotten their original position towards each other. In order to understand the question presented for our solution, it is necessary to recapitulate these different proceedings.

Even before Conner had filed his answer he was, by consent of parties, appointed receiver, with authority to pay off the debts of the firm, as well as to collect what was due, and to render an account whenever required.

On the next day he filed his answer, denying all the allegations of fraud and misfeasance, but charging, that the plaintiff had greatly injured the firm, and especially by the present violent and unjust measure. He however unites in the prayer, that the partnership may be dissolved and liquidated.

The parties, in an action of partition or final liquidation among partners, must be regarded as standing equal before the court. Whatever qualities they may have assumed, or may have been conferred on any one of them, either for the purpose of liquidation or as receiver, cannot be regarded by us as changing their relative positions, and ultimate responsibilities towards each other.

Auditors were appointed who made a report, which appears to have been overlooked in the subsequent proceedings, after being homologated.

The receiver, Conner, was appointed on the fourth of June, and on the tenth of the same month, a rule was taken on him by the plaintiffs to show cause, why he should not, on the 16th, file an account of what he had done as receiver, showing : 1st. What cotton he has sold, to whom, and for what price : 2d. What moneys he had received, and from whom ; and 3d. What letters he had received directed to Conner, Gridley & Co., their purport, and contents. On the 17th Conner filed an account, and fourteen letters. In this account he admits a balance due Conner, Gridley & Co., of $4375 45.

Gridley and another v. Conner.

At this stage of the proceedings one of the plaintiffs, Whitehead, takes a rule on Conner, the receiver, to show cause why the books, papers, &c., belonging to the late firm of Conner, Gridley & Co., should not be delivered to him, (he being one of the parties most interested, and the largest part of the partnership effects belonging to him,) for the purpose of liquidating and settling the affairs of the late partnership.

This was in substance a motion by one of the partners to deprive another who had been appointed by common consent, of the receivership, or the authority to collect the outstanding debts due to the partnership, and to apply the proceeds to the payment of the debts, and who had given satisfactory security for the faithful performance of the trust.

This rule was opposed by Conner, who denied the allegations therein made, and on the ground, that he had already been appointed to liquidate the affairs of the firm. The rule was, however, made absolute, and Whitehead appointed receiver, on giving bond to the Judge.

Shortly afterwards Kelly & Conyngham were appointed receivers, it would seem by consent of all parties concerned, and took charge of the books and papers.

Still the war of rules was carried on against Conner, who had been once appointed receiver, and had reported a balance due by him. On the 23d March, 1841, the plaintiffs' counsel obtained an order on him to file in court on the 27th, a report of all the sums received and paid out by him, and of the sums due to individuals for the proceeds of cotton sold by him as receiver, and also to file the correspondence between him and Baring Brothers, in relation to the shipment of cotton by Conner, Gridley & Co., and the account of sales, with all letters he may have received addressed to Conner, Gridley & Co.

On the 31st of March, Conner, in obedience to this order filed a detailed account of his proceedings, and disbursements, showing a balance in his favor of $1486 06. He also filed a long list of letters.

On the 12th of May, 1841, Kelly & Conyngham, the receivers, were authorized to pay any debts of the partnership, out of any funds which might come into their hands.

No further notice being taken at the moment of the report of Conner, the counsel of Kelly & Conyngham, the receivers, suggesting to the court that Conner had received and collected a large amount from the creditors of Conner, Gridley & Co., particularly $3000 and upwards from Brigham & Jessup, which he refuses to pay over to them, who alone were authorized to receive the same, obtained a rule on him to show cause why he should not file in court a full account of all moneys he had received and collected belonging to Conner, Gridley & Co., since the appointment of Kelly & Conyngham, and previous thereto, and also why he should not pay over the money which he may have in his possession thus collected.

Conner answered to this rule, that he had received no moneys for the firm since the account filed by him, and he denied all the allegations in the rule.

Some evidence was taken on this rule, and it was finally made absolute, and Conner ordered, within ten days, to file in court a full account of all moneys, notes, and merchandize, he had received and collected, belonging to the late firm of Conner, Gridley & Co., since the appointment of Kelly & Conyngham, as re ceivers, and previous thereto, and that he pay over to. said receivers any money which he may have in his hands.

An alleged disobedience of this order led to the imprisonment of Conner, for a contempt of court. A new account was finally rendered early in November, and the order of imprisonment was softened down to a fine of fifty dollars.

Again, on the 10th of November, the counsel of Kelly & Conyngham, took a rule on Conner, to show cause, why he should not pay them the money he has received belonging to the late firm of Conner, Gridley & Co., according to the testimony of Thomson, given on the 30th June, preceding, to wit, $2500, and upwards, from Brigham & Jessup, $2000 from Stafford, $1000 from Thomas, and a note of Cammack for about $400.

The next incident we meet with, unexpectedly, is a trial by jury; but what the issue was, it is impossible to tell, except so far as may be gathered from a bill of exceptions, from which it would appear, that the defendant insisted, that the jury should pronounce upon the whole matter in controversy, but the court restricted the

inquiry to the questions: 1st. Whether the partnership shall be dissolved: 2d. Whether the defendant be guilty of fraud as charged in the petition: and 3d. Whether the plaintiffs have in jured the commercial standing of the house. There was a verdict for the defendant. It was set aside and a new trial granted, which has never been had.

At this stage of the proceedings, Kelly & Conyngham filed their account as receivers, and prayed to be discharged. This was accordingly done; and, by an *ex parte* proceeding, Whitehead was appointed receiver in their stead, with full power to take into his possession all the books and property of every description belonging to Conner, Gridley & Co., and to collect all the debts due them, upon his giving bond, with satisfactory security, in the sum of five thousand dollars; and he was ordered to report his proceedings to the court every fifteen days, and to keep a bank book as receiver.

The new receiver, soon after his appointment, takes a rule on his partner Conner, the former receiver, to show cause, why he should not pay over to him the funds in his hands belonging to the concern of Conner, Gridley & Co.

Conner, in answer to this rule, denies that he has any funds in his hands belonging to the firm, but alleges, that he is, on the contrary, largely its creditor, as he will be ready to prove on a final liquidation of the matter, and he prays for *a trial by jury*. Whereupon, on the same day, a new, or rather an amended rule was taken by Whitehead, in his individual capacity, and as receiver, on Conner to show cause, why he should not pay over to Whitehead, in his said capacity, or to the judgment creditors of the partnership, the sum of five thousand five hundred and fifty-six dollars and three cents, the amount received by him, for which he is accountable as receiver, according to the account and statement now filed. This account is the one first rendered by Conner after his appointment.

This rule was made absolute, for $4844 54, and this is the judgment from which the appeal is taken.

Thus we find one partner, Gridley, entirely lost sight of; the other two not coming to a trial of the cause, as is shown by the pleadings, but by a series of petty attacks, and counter attacks,

protracting the litigation to a fearful extent, and to little purpose.
It is too well settled to be now questioned, that one partner can-
not single out a particular transaction, and obtain a judgment
against his co-partner thereupon.  He can only require a general
balance, and a final liquidation.  That which cannot be done di-
rectly cannot be permitted to be attempted indirectly.  To apply
the principle to the case now before us, if one of the plaintiffs
had at first demanded a judgment in his favor, against another, for
a specific sum in the present action of partition, it is certain that
he must have failed.  But it will be said, that he has now be-
come the *receiver*.  To this it may be answered, that the other
partner is also a receiver.  Both have given bonds, and we have
looked in vain for any order made contradictorily with Conner,
which invests his partner with the extraordinary power assumed in
this case.  The parties seem to have forgotten that the original
issue made up between them remains undecided ; and that the sub-
ject matter of the rule decided on by the District Court, sprung
into existence after the suit was brought.  It is impossible to do
justice between the parties by such a course of proceeding.
The whole case, in our opinion, ought to be sent to arbitrators or
amicable compounders, to settle the partnership concerns between
the parties upon principles of good faith ; and all the questions
presented by the record, and particularly whether the loss of the
cotton speculation shall be sustained by Conner alone, or by the
firm, and what damage the house may have sustained by Conner's
neglecting to obtain payment of Brigham & Jessup and of
Stafford, of certain debts due by them to the firm, together with
other minor questions.  But if the parties will not assent to this
course, then in our opinion the steps which the court ought to
take are obvious.  Conner, in answer to the last rule, prays for a
trial by jury of all the matters involved in the controversy, and
alleges, that he will owe nothing on a final settlement.  He is,
in our opinion, entitled to such a trial of the whole matter.  An
action of partition in a country parish, conducted as this has been,
would last probably for twenty years, and might not be decided
at last.  It is time to try the cause upon the pleadings, and upon
its merits, and to remember, that very rarely is it regular to give
judgment for sums of money in favor of one party against another,

on mere incidental rules to show cause, or upon motion, especially in actions of partition. It is only a final balance which they owe, and for which a final judgment can be given.

The judgment of the District Court is therefore reversed, and it is further ordered, that the case be remanded for a new trial by jury, unless the parties choose to submit all the matters in controversy to arbitration; and that the costs of the appeal be paid by the appellee.

*Elmore* and *W. W. King*, for the appellant.

*Roselius*, contra.*

---

*\*Roselius*, for a re-hearing. The opinion of the court declares "that the parties must be regarded as standing equal before the court, in an action of partition or final liquidation among partners. Whatever qualities they may have assumed, or may have been conferred on any one of them, either for the purpose of liquidation or as receiver, cannot be regarded by us as changing their relative position and ultimate responsibilities towards each other."

This is an error. The action for the dissolution and liquidation of the partnership is still pending and undecided in the court below, and has not the remotest connection with the case now before this court. The defendant is not sought to be made responsible for any transaction of the partnership. He is called on to render an account of a special agency. And whether he be named receiver or liquidator, cannot exempt him from the operation of the rules of law, by which the obligations of mandataries are governed. It is difficult to perceive any connection between a proceeding for such a purpose, and a suit for the dissolution and liquidation of the partnership. The case presents the question, whether an agent or trustee is bound to account for and pay over funds, which he has received by virtue of his agency or trust; a question arising after the institution of the suit for the settlement of the partnership, and which therefore cannot be at issue in that action. Suppose the agency had been conferred on a stranger, could it be pretended that the question of his accountability was involved in the main action? And if not, what reason can be adduced for adopting a different rule with regard to one of the partners? The very perplexity and confusion complained of, will be the inevitable consequence of huddling together matters so entirely distinct and separate. It is said that "Conner is also a receiver." This is a mistake. By reference to the record it will be found, that on the 10th of March, 1841, Conner's own counsel applied to the court for the appointment of H. F. Cantzon, and Kelly & Conyngham, as receivers in the place of Conner. In pursuance of this application by Conner's counsel, Kelly & Conyngham, were invested with the same power to collect and pay the active and passive debts as had been dele-

gated to Conner. On their resignation Whitehead was appointed, without the slightest opposition or objection on the part of any one ; and up to the present time no one has ever complained of this last appointment. All parties were fully aware of its necessity. The proceedings against Conner, for the purpose of compelling him to render an account of his agency, were never resisted on the ground that Whitehead's appointment was irregular. No bill of exceptions can be found on the record, nor is there any assignment of errors. Under such a state of facts it is not perceived how this court can take notice of any supposed or real informalities in the proceedings in the court below. Where is the evidence in the record that the defendant insisted on having the present case consolidated with the main action ? Can this court, under the well established rules of practice, afford relief to parties, when they do not complain, and present their complaint in such a shape as the law requires ? The answer to the rule taken, on the 5th March, in which Conner prays for a trial by jury, is of no importance whatever, because that rule was abandoned and never acted on. The judgment appealed from was rendered on the rule taken on the 12th of March. No objection to the trial of that rule was made, either on the ground that the defendant was entitled to a jury trial, or for any other reason. But even if it be conceded, that the prayer for a trial by jury can be applied to the rule of the 12th March, it is clear, that it cannot avail the defendant. By the 17th section of the act of the 10th February, 1841, it is provided, that "*the cases now pending in which a trial by jury is asked for, shall be stricken from the jury docket, unless the compensation to be allowed to jurors is advanced by the party demanding a trial by jury.*" See session acts of 1841, p. 17 and 18. The compensation to be paid to jurors was not paid in this case ; consequently the defendant lost his right.

The proceeding by rule was not objected to. The cause was tried on its real merits, by consent of both parties ; and now in the Supreme Court the objection is first made. This court has no right to correct any real or supposed irregularity in the proceedings of the court of the first instance, unless it be shown either by way of an exception, or a bill of exceptions, that the party urged the objection in the court below ; neither of which was done in the present case. If there was any thing in the objection itself, it is too late now to urge it.

It is true, as the court correctly observes, that one partner cannot single out a particular transaction and obtain a judgment against his co-partner thereupon. From this, however, it does not follow, that an agent, or a trustee, cannot be compelled to render an account of his trust, or agency, to another trustee or agent, who has superseded him.

*Re-hearing refused.*